# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| DEANNA MICHELLE MORY, an individual; CHULA VISTA POLICE OFFICERS ASSOCIATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF CHULA VISTA ET AL.,<br><br>Defendant. | CASE NO. 06CV1460<br><br>**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFFS' APPLICATION FOR A CONTINUANCE UNDER RULE 56(f)**; (3) **DENYING DEFENDANTS' MOTION FOR SANCTIONS** |
|---|---|

Presently before the Court are Defendants' Motion for Summary Judgment [Doc. No. 36], Plaintiffs' Opposition [Doc. No. 89], and Defendants' Reply [Doc. No. 111]; Plaintiffs' Application for a Continuance under Rule 56(f) [Doc. No. 113] and Defendants' Opposition [Doc. No. 115]; Defendants' Motion for Sanctions [Doc. No. 53], Plaintiffs' Opposition [Doc. No. 69], and Defendants' Reply [Doc. No. 72.] For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, **DENIES** Plaintiffs' 56(f) Application, and **DENIES** Defendants' Motion for Sanctions.

**BACKGROUND**

The city of Chula Vista ("Defendant") hired Plaintiff Deanne Mory ("Mory") as a police officer on April 22, 2005. [Pls.' Opp. at 1.] The Chula Vista Police Department ("CVPD" or "Department") requires all newly hired police officers to pass a probationary period of 18 months. [Defs.' Motion at 2.] During this period, Mory entered the police academy and graduated on October 7, 2005. [Id.] After graduating, she began her field training, which lasted until May 2006. [Id.] Throughout the training period, Mory met the Department's standards, but she committed errors in the areas of officer safety and prisoner control. [Id.] Mory admits that her supervisors treated her appropriately during her training. [Id.]

The CVPD has a policy of prohibiting officers from participating in outside employment activities during their 18 month probationary period. [Id.] This policy is derived from the Incompatible Activities Code ("IAC") for city employees and from California Government Code § 1126. [Defs.' Motion, Ex. L.; see infra (II)(D) (explaining Section 1126).] Mory admits that this policy was explained to her during orientation training; however, she understood that there was a process by which CVPD employees could request permission to participate in outside employment. [Id.; Defs.' Separate Statement of Uncontroverted Facts ("DUF") Nos. 8-9.]

In December 2005, Mory submitted an application to be considered for the title of Ms. California United States so that she could compete in the national Ms. United States Pageant in July 2006. [DUF No. 11.] On January 1, 2006, Mory was selected as Ms. California United States. [Id. No. 12.] After being selected Ms. California, Mory became concerned that due to her probationary status, her participation in the Ms. United States Pageant might be considered outside employment and thereby violate the CVPD's policy. [Id. Nos. 13-14.]

On January 4, 2006, Mory notified the CVPD's management of her intent to participate in the pageant. [Defs.' Motion at 2.] Thereafter, Lieutenant Roxanna Kennedy of the Professional Standards Unit spent a substantial amount of time researching the Ms. United States pageant to determine how much time and attention would be diverted from Mory's training if she were to participate and attend other related pageant events and appearances. [DUF No. 22.] Police management, including

individual Defendant Captain Don Hunter, deliberated over Mory's request and consulted the City Attorney's Office. [Defs.' Motion at 2-3.] After deliberating, the management concluded that Mory's participation would be detrimental to her development as a police officer due to the time and effort she would have to commit to the pageant during her training and probationary period. [Defs.' Motion at 2-3.] As a result, Lieutenant Kennedy expressly ordered Mory not to participate in the Ms. United States pageant. However, she encouraged her to apply to participate the following year, after a successful completion of her probationary period. [Id.]

The President of the Chula Vista Police Officer's Association ("CVPOA"), Manny Mendoza, advised Mory that she could be deemed insubordinate if she violated a direct order and continued to participate.[1] [Id.; DUF No. 35.] President Mendoza suggested that any further participation should be done quietly. [Id.] Nonetheless, Mory requested various days off to participate, and she admits that she continued to take part in activities related to the pageant during her probationary period. [Id.; DUF Nos. 37-39.]

On July 19, 2006, Mory filed the instant action against Defendants, in large part, to challenge the order prohibiting her from participating in the pageant. [Pls.' Opp. at 4.] The next day, on July 20, 2006, CVPD Defendants Chief Richard Emerson and Captain Hunter informed Mory and her attorneys, in writing, that Mory's request to participate in the pageant was approved. [Defs.' Motion at 3.] Chief Emerson and Captain Hunter reasoned that the issue was not worth "fighting over" even though Mory's participation in the pageant would violate the Department's established policy regarding incompatible probationary activities, and even though Mory's participation was an act of clear insubordination. [Id.] Therefore, Mory participated in the Ms. United States pageant from July 21 through July 25, 2006. [DUF No. 44.]

On October 7, 2006, Mory received a written reprimand after allowing a handcuffed burglary suspect to escape while in her custody. [Defs.' Motion at 4.] Members of the CVPOA conducted an

---

[1] The CVPOA is also a Co-Plaintiff in this action. The CVPOA is a collective bargaining unit representing police officers and probationary officers in relation to the terms and conditions of employment. [Pls.' Opp. At 5-6.]

1  internal investigation of the incident and concluded that the written reprimand was proper. [Id.]

2  Nevertheless, on October 23, 2006, Mory received her second generally positive performance
3  evaluation. [Id.] On October 27, 2006, Mory passed probation and became a regular CVPD employee
4  notwithstanding various negative performance issues during her probationary period. [Id. at 4-5; DUF
5  No. 52 (stating Mory failed to instruct a suspect of his Miranda rights, lost her baton, and needed to
6  be careful to "avoid the appearance of overconfidence or lack of humility").]  As of the date of
7  Defendants' motion, Mory was still working as a police officer for the CVPD and she was once again
8  selected as Ms. California for 2007. [Defs.' Opp. at 5.]

9  Plaintiffs now ask for relief from this Court for Defendants' alleged violations of federal and
10 state gender discrimination and employment retaliation laws.  Specifically, Plaintiff seeks: (1) a
11 declaration that Mory's participation in the Ms. United States Pageant is not and cannot be considered
12 a violation of the CVPD's policy regarding outside employment; (2) a declaration that Defendants
13 may not take disciplinary action against Plaintiff for participation in the Ms. United States Pageant
14 whether or not she wins prizes; (3) a declaration that Defendants' interpretation of the CVPD's policy
15 regarding outside employment has a disparate impact on female police officers, and that any
16 interpretation of that policy that prevents the exercise of constitutionally protected rights is invalid and
17 unenforceable; (4) damages; (5) costs; and (6) attorneys' fees. [First Amended Complaint ("FAC"),
18 Prayer for Relief.]

## ANALYSIS

**I.    Plaintiffs' Declaratory Relief Claims are Nonjusticiable**

The federal Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Cost., Art. III, § 2.  Federal courts do not have power to decide questions of law in a vacuum.  They may only determine such matters as arise in the context of a genuine "case" or "controversy" within the meaning of Article III. SEC. V. Medical Committee for Human Rights, 404 U.S. 403, 407 (1972).

### A. Plaintiffs Lack Standing In Their Declaratory Relief Claims

Standing is a jurisdictional requirement, "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The doctrine of standing is comprised both of constitutional or "Article III" requirements and of "prudential considerations." Gladstone Realtors v. Village of Bellowood, 441 U.S. 91, 99 (1979).

To establish a "case or controversy" within the meaning of Article III, a plaintiff must show each of the following as an "irreducible minimum:" (1) an "injury in fact" that is concrete and not conjectural; (2) a causal connection between the injury and a defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61.

In the present action, it is undisputed that Mory was, in fact, permitted to participate in the 2006 Ms. United States Pageant and she did so. [DUF No. 44] Mory has since received positive performance evaluations, passed probation, and has become a regular, nonprobationary employee. [DUF No. 58.] She has also been selected again as Ms. California 2007 and continues to participate in beauty pageants and related activities without opposition from the Defendants. [DUF Nos. 59-60.] Therefore, there is no "credible threat" that the CVPD will attempt to prevent Mory from participating in such pageants in the future. See Arizona Right to Life PAC v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003) (stating a plaintiff demonstrates an "injury-in-fact" when he or she "intends to engage in a course of conduct arguably affected with a constitutional interest and there is a credible threat that the challenged provisions will be invoked against the plaintiff").

Mory contends that declaratory relief is necessary because the CVPD's "investigations and conclusions" will remain on her record and "may well be a factor in sought after assignments, promotions, transfers, and other job benefits." [Pls.' Opp. at 3, 5]. These "investigations and conclusions" refer to Lieutenant Kennedy's notes that reference Human Resource Director Marcia Raskin's conclusion that there was "sufficient grounds to terminate Mory for failing to meet [the] probationary standard." [Id.; Pls.' Exhibit 6.]

The Court finds that this argument improperly rests on hearsay evidence and fails as premature and speculative. Mory has not indicated that any specific benefit, promotion, or

1 opportunity was denied to her or is threatened as a result of these "investigations and conclusions" 2 or beauty pageant participation. Lujan, 504 U.S. at 559-60 (stating the "injury in fact" 3 requirement must involve "an invasion of a legally protected interest which is (a) concrete and 4 particularized; and (b) actual or imminent, not conjectural or hypothetical").

5 Furthermore, Mory's, Co-Plaintiff, the CVPOA, also has no basis for standing. An 6 organization may establish standing by showing: "(1) frustration of its organizational mission; and 7 (2) diversion of its resources to combat the alleged wrongful conduct." Smith v. Pacific Props. & 8 Dev. Corp., 358 F.3d 1097, 1105 (9th Cir. 2004). Here, Plaintiffs have not presented any evidence 9 that shows how any of Defendants' actions "injured" the CVPOA or "frustrated its organizational 10 mission" to act as a collective bargaining unit. In addition, Plaintiffs admit that there are no 11 pending requests by CVPOA members for outside employment activity and they have not 12 demonstrated that CVPOA members have been denied the opportunity to participate in such 13 outside activities. [DUF 70-72.] Therefore, both Mory and the CVPOA lack standing in their 14 declaratory relief claims.

### B. Plaintiffs' Claims for Declaratory Relief Are Moot

17 A federal court has no authority to give opinions upon moot questions. Arizonans for 18 Official English v. Arizona, 520 U.S. 43, 67 (1997) ("an actual controversy must be extant at all 19 stages of review, not merely at the time the complaint is filed"). "A case is moot when the issues 20 presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." 21 City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). In addition, an action becomes moot where 22 subsequent events make clear that "the allegedly wrongful behavior could not reasonably be 23 expected to recur" and interim relief or events have "eradicated the effects of the alleged 24 violation." Los Angeles County v. Davis, 440 U.S. 625, 631 (1979).

25 Here, assuming that the Department acted improperly by initially telling Mory she could 26 not participate in the 2006 pageant; the Department's subsequent granting of permission 27 completely "eradicated the effects" of the initial denial. Further, Mory is no longer a probationary

1  employee and continues to participate in beauty pageants.  Therefore, there is no reasonable
2  expectation that the Department's policy regarding probationers will be applied to her in the
3  future, or that she will be prevented from participating in future beauty pageants.
4  Moreover, as mentioned, there are no pending requests by any CVPOA member,
5  probationary or otherwise, for outside activity employment, nor any evidence that CVPOA
6  members have been precluded from participation in such activities.  [DUF Nos. 70-72.]  In short,
7  there is simply no "live dispute" between the parties with respect to the IAC.

### C. Plaintiffs' Claims for Declaratory Relief are Unripe

The doctrine of ripeness prevents premature adjudication of cases that do not yet have a concrete impact upon the parties.  Thomas v. Union Carbide Agricultural Prod. Co., 473 U.S. 568, 580 (1985).  Inquiries into ripeness generally focus on whether the relevant issues are sufficiently focused as to permit judicial resolution without further factual development.  Clinton v. Acequia, Inc., 94 F.3d 568, 572 (9th Cir. 1996) ("a case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur").

Plaintiffs ask this Court to declare that: (1) participation in beauty pageants is not a violation of the IAC; (2) Defendants may not discipline Mory for participating in beauty pageants; and (3) Defendants must refrain from interpreting the IAC in a manner that discriminates against female officers and prevents the exercise of constitutionally protected rights.  [FAC, Prayer for Relief.]

However, the present circumstances are not ripe for any such declaration.  First, the basis of Plaintiffs' lawsuit involves the Department's initial decision ordering Mory not to participate in the 2006 pageant.  Mory was ultimately allowed to participate and there is no credible threat that she will be prevented from participating in the future.  Second, Plaintiffs have not shown that there are any current outside employment requests or any other denials of such requests.  Third, at oral argument, Plaintiffs' counsel indicated that the issue of whether Mory may accept prize money only arises if Mory wins the Ms. United States Pageant.  At this stage, it is far from certain that

1   Mory will: (1) choose to participate in the Ms. California 2008 pageant; (2) win that pageant; (3)
2   participate in the 2008 Ms. United States Pageant; (4) win that pageant; (5) accept prizes; and (6)
3   face discipline from the CVPD.
4       Therefore, the existence of this dispute "hangs on future contingencies," rendering
5   Plaintiffs' declaratory relief claims unripe.  Consequently, if the Court were to grant the
6   declaratory relief that Plaintiffs request, it would impermissibly render an advisory opinion.  <u>Aetna</u>
7   <u>Life Ins. Co. v. Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 240 (1937) (stating that federal courts
8   have no power to render advisory opinions as to what the law ought to be or affecting a dispute
9   that has not yet arisen).
10
11  **II.     Summary Judgment is Proper Because Plaintiffs Cannot Produce Admissible Evidence To Create A Genuine Issue as to Any Material Fact**
12
13      **A.     Legal Standard**
14      Under Rule 56(c), summary judgment is proper when the pleadings and discovery, read in
15  the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to
16  any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Armstrong</u>
17  <u>v. Burlington N. R.R. Co</u>., 139 F.3d 1277, 1278 (9th Cir. 1998) (quoting <u>20th Century Ins. Co. v.</u>
18  <u>Liberty Mut. Ins. Co</u>., 965 F.2d 747, 750 (9th Cir. 1992)); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby,</u>
19  <u>Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is "genuine" when "the evidence presented is such that
20  a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff
21  or the defendant."  <u>Anderson</u>, 477 U.S. at 255.
22      Even where some facts are disputed, summary judgment is still appropriate "[i]f the
23  evidence is merely colorable, or is not significantly probative."  <u>Anderson</u>, 477 U.S. at 249-50.  No
24  genuine issue for trial exists if "the record taken as a whole could not lead a rational trier of fact to
25  find for the nonmoving party."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
26  587 (1986).  Additionally, a moving party may carry its burden on summary judgment by showing
27  that the opposing party lacks sufficient evidence to establish an essential element of the opposing
28  party's claim or defense.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

### B. Plaintiffs' § 1983 Claim Fails As A Matter of Law

Plaintiffs allege violations of Mory's rights under the First and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiffs allege that Defendants have violated Mory's rights to "free speech" and "peaceable public assembly" by supposedly interpreting the city of Chula Vista's IAC so as to prevent Plaintiff from participating in a beauty pageant. [FAC, ¶¶ 26-35.]

To state a prima facie case that an employer has violated First Amendment rights, an employee must show that: (1) the speech involves a matter of "public concern;" (2) the employer took adverse employment action against the employee; and (3) the speech was a substantial or motivating factor for the adverse employment action. Coszalter v. City of Salem, 308 F.3d 968, 976 (9th Cir. 2003).

Plaintiffs argue at length that Mory's speech involves a matter of public concern because her "chosen platform" at the beauty pageant was Alzheimer's disease awareness. [Pls.' Opp. at 10.] Plaintiffs also allege that Defendants took adverse employment actions due to her platform in the form of retaliatory acts that included: (1) issuing negative performance evaluations and falsely telling Mory that she was having problems and might not pass probation; (2) issuing a written reprimand; (3) conducting a "secret" investigation; (4) falsely telling Mory that her participation in the pageant constituted prohibited outside employment; (5) telling her she had to choose between being a cop and a "beauty queen" and that insubordination is a proper basis for termination; (6) referring to her as a substandard police officer; and (7) creating tee-shirts that express support for the nine named Defendants in her second lawsuit ("Mory II"). [Id. at 4, 12-16.] This Court finds that even assuming, arguendo, that Mory's Alzheimer's "platform" renders her speech a matter of "public concern," and that Defendants' actions were "adverse" under the law; there is still no triable issue of fact as to whether her platform was the "substantial or motivating factor" behind the alleged adverse actions.

More importantly, there is no evidence indicating that Mory's decision to speak publicly about Alzheimer's disease was the substantial or motivating factor for these actions. However,

1  there is a substantial amount of evidence illustrating that the actions arose as a result of other
2  reasons, including Mory's insubordination, her desire to violate the IAC, and her errors in training.

4  For example, regarding the first alleged "action," Mory generally admits that she has no
5  reason to believe that she has ever received negative comments in her performance evaluation
6  because of her participation in a beauty pageant.  [DUF No. 56.]

7  Second, Mory stated that she cannot disagree with the finding that she violated Department
8  policy pertaining to the control of suspects in custody.  [DUF Nos. 50, 56]  Additionally, Co-
9  Plaintiff CVPOA members conducted an internal investigation of the incident and concluded that
10 the reprimand was proper.  [Defs.' Motion at 4.]

11 Third, there is no evidence of a "secret" investigation.  In fact, the CVPD's management
12 discussed Mory's request, consulted the City Attorney's Office, and determined that her
13 participation in the pageant would violate their policy regarding probationary employees.  [Defs.'
14 Motion at 2-3.]

15 Fourth, such a good faith interpretation of the IAC or Department policy could not
16 reasonably be considered an "adverse" action.  <u>Seebald v. Praxair, Inc.</u>, 2004 U.S. Dist. LEXIS
17 2643, *45-46 (E.D. Pa. 2004) (stating that informing an employee of office policies is a normal
18 work-related administrative matter and is not an adverse action).

19 The fifth action simply relates to Lieutenant Kennedy's concern that Mory's participation
20 would be detrimental to her development as a police officer.  [DUF Nos. 23-26.]  She told Mory
21 that she could wait and participate as soon as she was off of probationary status.  [<u>Id.</u>]  Mory also
22 admitted in her deposition that in her opinion, "basically [] they weren't in favor of the timing
23 itself."  [<u>Id.</u>; No. 28; Mory Depo. 90:14-91:5.]  When asked what management did not like about
24 the timing, she replied, "[w]ell, because of the fact I was still on probation."  [<u>Id.</u>]  Together, these
25 facts reveal that Defendants informed Mory of the risks of insubordination so that she could better
26 evaluate her options, not to dissuade her from speaking about Alzheimer's disease or from
27 participating in pageants generally.  [<u>Id.</u>]

The sixth action concerns Mory's allegations that some Defendants thought she was a substandard officer and therefore referred to her as the "$1.98 officer." As conceded by Plaintiffs, some of the Defendants allegedly used this term because they felt that their union dues should not be directed towards the prosecution of Mory's case since she was so new to the union and had not invested as much into it as other officers had. The Ninth Circuit has deemed that this type of "bad mouthing" is a nonactionable minor act. Coszalter, 320 F.3d at 976. Further, the term has no direct link to Mory's Alzheimer's platform or participation in beauty pageants, but instead, relates to her level of investment into the union.

Finally, the seventh alleged adverse action, arises from Defendants' creation of tee-shirts that stated "I Support the Outta Line-Nine," referring to the nine named Defendants in Mory II. [Pls.' Opp. At 4.] Plaintiffs concede in their brief that the tee-shirts are an expression of opposition to a lawsuit, and do not even argue that they were made in retaliation to Mory's allegedly protected "speech." [2]

Thus, in sum: (1) Mory was ultimately allowed to participate in the pageants; (2) there is no threat that her allegedly protected "speech" in these pageants will be threatened as a nonprobationary officer; and (3) there is no triable issue of fact as to whether her speech was the motivating factor behind Defendants' alleged adverse actions. Accordingly, Plaintiffs are unable to make a prima facie § 1983 claim.

### C.   Plaintiffs Monell Claim Should Be Dismissed

A municipality cannot be held vicariously liable under § 1983 for the acts of its employees or agents. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, municipal liability only attaches where action taken pursuant to official municipal policy causes a constitutional violation. Id. at 691 n. 55, 690. A single or isolated incident of police misconduct cannot create

---

[2] Moreover, the Court also finds that the tee-shirts–expressions of support for Defendants in a public lawsuit–constitute protected free speech. Cohen v. California, 403 U.S. 15, 26 (1971) (applying ordinary First Amendment principles to tee-shirt slogan reading "Fuck the draft"); Ayres v. City of Chicago, 125 F.3d 1010, 1017 (7th Cir. 1997) (finding "message-bearing" tee-shirts are "vehicles of . . . ideas and opinions" and can constitute protected speech).

1  municipal liability, as this would be the functional equivalent of respondeat superior.  See, e.g.,
2  Rodriguez v. Avita, 871 F.2d 552 (5th Cir. 1989).

3  "[T]he touchstone of the § 1983 action against a government body is an allegation that
4  official policy is responsible for a deprivation of rights protected by the Constitution."  Monell,
5  436 U.S. at 690.  Nevertheless, a plaintiff may establish municipal liability by showing that,
6  although no formal policy has been established, his constitutional injury was caused by a
7  government practice that has become "so permanent and well-settled as to constitute a 'custom or
8  usage' with the force of law."  Id.  In order to withstand summary judgment on a § 1983 claim
9  against a municipality, a plaintiff must offer enough evidence to create a genuine issue of fact as to
10 both the existence of a constitutional violation and municipal responsibility for that violation.  Id.
11 at 690-91.

12 Beyond having to identify "conduct properly attributable to the municipality[,]" a plaintiff
13 must also demonstrate that the municipality, through its deliberate conduct, was the "moving
14 force" behind the alleged injury.  City of Canton v. Harris, 489 U.S. 378, 385 (1989).  In other
15 words, a plaintiff must show that the municipal action was taken with the requisite degree of
16 culpability, and demonstrate a direct causal link between the municipal policy or custom and the
17 alleged deprivation of federal rights.  Id.

18 As mentioned above, Plaintiff is unable to demonstrate that Mory's First Amendment
19 rights were violated, let alone that the city of Chula Vista has engaged in a pattern or practice of
20 retaliating against officers who exercise their constitutional rights.  In fact, the CVPOA's President
21 and designated Person Most Knowledgeable admitted at deposition that this action was brought for
22 the purpose of addressing the situation surrounding Mory's participation in the 2006 Ms. United
23 States pageant, and that the CVPOA did not have any concerns that the Department had engaged
24 in a pattern or practice of discrimination against CVPOA members.  [DUF Nos. 63-64.]

25 Thus, because Plaintiffs cannot demonstrate the existence of any constitutional violation or
26 of any widespread city custom or policy that was the "moving force" behind such alleged
27 violation, they cannot establish any municipal liability on their § 1983 claim.

28

**D.     Chief Emerson and Captain Hunter Are Entitled to Qualified Immunity on Plaintiffs' § 1983 Claim**

Qualified immunity from civil suit is available to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts examine a qualified immunity defense with a two-step test. First, they determine whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is present, courts go on to ask "whether the right was clearly established." Id. To be clearly established, it must "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. In making this determination, courts consider the state of the law at the time of the alleged violation. See Blankenhorn v. City of Orange, 485 F.3d 463, 476 (9th Cir. 2007); Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002). Courts also examine the "information possessed" by the officer to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Anderson v. Creighton, 483 U.S. 635, 641 (1987); Sorrels, 290 F.3d at 970. The "subjective beliefs" of the actual officer are "irrelevant." Anderson, 483 U.S. at 641.

Plaintiffs fail to meet their burden of proof on either step of the qualified immunity analysis. Certainly, there is no constitutional right for probationary police officers to participate in beauty pageants. Plaintiffs, construing Mory's right more broadly, find that Defendants violated Mory's "clearly established right" to free speech by preventing her from speaking about an issue of public concern–Alzheimer's disease. [Pls.' Opp. at 18.] However, even under this broad characterization of her right, this argument also fails because Defendants ultimately permitted her to participate in the pageant. Thus, this Court finds that Defendants' <u>temporary</u> denial of Mory's request to participate in a beauty pageant is not a free speech violation.

Even if this temporary denial somehow constituted a violation of Mory's free speech, Defendants acted reasonably. California Government Code §1126 expressly provides:

> (a) Except as provided in Sections 1128 and 1129, a local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed.
>
> (b) Each appointing power may determine . . . those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees. <u>An employee's outside employment, activity, or enterprise may be prohibited if it . . . involves the time demands as would render performance of his or her duties as a local agency officer or employee less efficient.</u>

Cal. Gov. Code § 1126 (2007).

This code section and the IAC existed at the time of Defendants' decision. Additionally, this established practice was based on a reasonable objective: placing police officer training above participation in outside employment activities. [Defs.' Motion at 18-19.] Therefore, a reasonable officer would not believe that it was unlawful to limit Mory's beauty pageant participation while she was a probationary officer.

Thus, in sum, Plaintiffs have failed to show that Mory's constitutional rights were violated, or that Defendants acted unreasonably. Accordingly, both men are entitled to qualified immunity on Plaintiffs' § 1983 claim.

### E. Plaintiffs' Gender Discrimination Claim Fails as a Matter of Law

#### 1. Legal Standard

The Supreme Court has set forth a three-step burden shifting test for analyzing discrimination claims. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal.4th 317, 353 (2000). The plaintiff first has the burden of establishing a <u>prima facie</u> case of discrimination.[3] <u>McDonnell</u>, 411 U.S. at 802. The defendant then has the burden to

---

[3] To establish a <u>prima facie</u> case of disparate treatment under Title VII, a plaintiff must provide evidence that "give[s] rise to an inference of unlawful discrimination." <u>Texas Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). The Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. <u>See</u> <u>Leong v. Potter</u>, 347 F.3d 1117, 1124 (9th Cir. 2003).

1  articulate some legitimate, non-discriminatory reason for its action. Id.; Texas Dept. of Cmty.
2  Affairs v. Burdine, 450 U.S. 248, 256 (1981). "The defendant need not persuade the court that it
3  was actually motivated by the proffered reasons [citation]. It is sufficient if the defendant's
4  evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id.;
5  see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (stating that the defendant's
6  burden is one of production only, however, and that the "ultimate burden of persuading the trier of
7  fact that the defendant intentionally discriminated against the plaintiff remains at all times with the
8  plaintiff"). Once the defendant carries that burden, the presumption of discrimination disappears,
9  and the plaintiff must demonstrate that the reason offered by the defendant was a mere pretext for
10 discrimination. McDonnell, 411 U.S. at 805.

11    The plaintiff can show pretext either by persuading the court that a discriminatory reason
12 was the more likely motivating factor behind her termination, or by showing that the employer's
13 proffered explanation is unworthy of credence. Id. at 804-05. The Ninth Circuit has stated that
14 "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars,
15 will not bar summary judgment." Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1419
16 (9th Cir. 1988); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) ("In response to the
17 defendant's offer of nondiscriminatory reasons, the plaintiff must produce specific, substantial
18 evidence of pretext. In other words, the plaintiff must tender a genuine issue of material fact as to
19 pretext in order to avoid summary judgment."). Id.

20

21    **2.   Plaintiffs Cannot Establish That Defendants' Proffered Reasons For
         Their Alleged "Adverse Actions" Were a Pretext for Intentional
22       Discrimination or Retaliation**

23    Assuming, arguendo, that Plaintiffs are able to establish a prima facie case, Plaintiffs'
24 gender discrimination claim still fails because they have not produced any valid evidence of
25 pretext. As discussed earlier in this order, Defendants have submitted legitimate explanations for
26 each of their alleged "adverse" actions. [See supra (II)(B).] Plaintiffs' only evidence that these
27 explanations are pretext is that Defendants permitted male officers to participate in charity
28

calendar photo shoots, a "Baker to Vegas" foot race, and allowed a male probationary officer to engage in off-duty employment as a chiropractor. [FAC ¶ 44.] However, this does not indicate pretext because, like these male officers, Mory was <u>ultimately permitted</u> to participate in her outside employment activity. Therefore, the Court **DISMISSES** Plaintiffs' gender discrimination claim.[4]

### 3. Plaintiffs' State-Law Claims for "Gender Harassment" and "Failure to Prevent Harassment" Lack Adequate Evidentiary Support

Claims of a hostile or abusive working environment due to sexual harassment arise when a workplace is "permeated with 'discriminatory intimidation, ridicule, and insult . . . ' [citation] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' . . . ." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993); <u>see also</u> <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 67 (1986); <u>Sheffield v. Los Angeles County Dept. of Social Services</u>, 109 Cal.App.4th 153, 160 (2003); <u>Beyda v. City of Los Angeles</u>, 65 Cal.App.4th 511, 516-17 (1998); <u>Fisher v. San Pedro Peninsula Hospital</u>, 214 Cal. App. 3d 590, 608 (1989). The elements this cause of action are: "(1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) <u>respondeat superior</u>." <u>Fisher</u>, 214 Cal. App. 3d at 608.

Plaintiffs' state-law sexual harassment claims are premised on precisely the same conduct

---

[4] Plaintiffs also raise state and federal employment retaliation claims based on some of the alleged adverse actions previously discussed. [FAC ¶¶ 58-64, 80-81.] Plaintiffs assert that after Mory filed a discrimination claim with the California Department of Fair Employment & Housing, Defendants retaliated against her by: (1) providing her a negative performance evaluation and (2) issuing her a written reprimand for failing to handle a prisoner properly. [FAC ¶¶ 60-61.] Courts analyze federal and California employment retaliations claims by using the same <u>McDonnell</u> test discussed above. <u>Stegall v. Citadel Broadcasting Co.</u>, 350 F.3d 1061, 1065 (9th Cir. 2003); <u>Flait v. North American Watch Corp.</u>, 3 Cal.App.4th 467, 475-76 (1992); <u>Barefield v. Bd. of Trs.</u>, 500 F. Supp. 2d 1244, 1271 (E.D. Cal. 2007). Similar to the discrimination claim, Plaintiffs have failed to adequately demonstrate that Defendants' non-retaliatory reasons for these "adverse" actions are pretext. Therefore Plaintiffs' retaliation claims are also dismissed.

as their legally defective discrimination claims. As discussed earlier, the Court finds that Plaintiffs have failed to adequately explain how these alleged adverse actions are attributed to Mory's sex and are not based on legitimate reasons. Moreover, Plaintiffs have not specifically shown that imposing restrictions on probationary officers' outside employment, issuing negative performance evaluations, and creating tee-shirts in opposition to a lawsuit constitutes "severe" or "pervasive" misconduct. Therefore, the Court **DISMISSES** Plaintiffs' gender harassment claims.[5]

### III.     Plaintiffs' 56(f) Application is Denied

Plaintiffs seek to continue Defendants' motion for summary judgment to conduct further depositions. They allege that CVPD Officer Noreen Anderson was allegedly treated callously after undergoing cosmetic surgery, and that her medical privacy rights were concurrently violated. [Pls.' App. at 4-5.] As a result, Plaintiffs argue that they need to depose Officer Anderson and others in order to show a hostile work environment against female officers. [Id.] Second, Plaintiffs seek to re-depose Chief Emerson and Captain Hunter, arguing that they were uncooperative in their prior depositions regarding the creation of the "Outta Line-Nine" tee-shirts. For the following reasons, this Court denies Plaintiffs' application.

A party seeking a Rule 56(f) continuance must demonstrate "due diligence" both in the pursuit of discovery before the motion for summary judgment was made, and the pursuit of the extension of time after the motion is made. Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002); Monarch Greenback, LLC v. Monticello Ins. Co., 118 F. Supp. 2d 1068, 1081-82 (D. Idaho 1999). Courts will deny 56(f) motions if a party had prior opportunities to discover the information and if the information sought is irrelevant. 11-56 Moore's Federal Practice - Civil § 56.10 [8][a]; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996) (movant must proffer sufficient facts to show that evidence sought exists and that it would prevent summary

---

[5] Plaintiffs' claim for "failure to prevent harassment" is also barred as a matter of law. Trujillo v. North County Transit District, 63 Cal.App.4th 280, 284-89 (1998) ("[T]here [is] no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred . . . .").

judgment); Roark v. City of Hazen, 189 F.3d 758, 762 (8th Cir. 1999) (district court properly denied plaintiff's motion for additional time to complete discovery because plaintiff failed to state what discovery was lacking or what information further discovery might reveal). The party opposing the summary judgment motion must "state with particularity why it is unable to oppose the motion, state with specificity what facts it intends to seek through discovery, and show how its discovery efforts are reasonably expected to create a triable issue." New.Net., Inc. v. Lavasoft, 356 F.Supp.2d 1090, 1101-02 (C.D. Cal. 2004).

In the present action, Magistrate Judge Major has already indicated that Plaintiffs have not acted diligently with regard to conducting discovery. In a prior hearing regarding Plaintiffs' first 56(f) application, the Magistrate stated that she would permit Plaintiffs to re-depose Chief Emerson and Captain Hunter about the tee-shirts but stated:

> I previously have denied a request to extend discovery dates. I did that based upon the fact that, in my view, the parties have not acted diligently with regard to conducting discovery, especially the Plaintiffs, and I didn't feel it was appropriate to reward that behavior by extending the dates. So while I am going to follow Judge Houston's order and permit Plaintiffs to do some type of discovery, I don't find that they have established that they acted diligently or that they provided good cause for unfettered discovery.

[Transcript of Magistrate Judge Major's July 11, 2007 Discovery Hearing at 15; Doc. No. 79.]

This Court also takes note of Plaintiffs' lack of diligence in this case. At 5:04 p.m., on the evening before the hearing on this motion, Plaintiffs filed "supplemental evidence" to support their 56(f) application. [Doc. No. 127.] The evidence consisted of a declaration from Ms. Ilyana Smith, a female CVPD police officer alleging a higher ranking officer sexually harassed her. [Id.] Plaintiffs' counsel states that he filed this declaration so late because Ms. Smith was previously unwilling to testify out of fear of retaliation. Yet, in her declaration, Ms. Smith never states that Plaintiffs' counsel previously approached her for a declaration or that she refused due to a fear of retaliation. [Id.] Additionally, the Court finds it questionable that Ms. Smith's inhibitions subsided the night before the hearing.[6]

---

[6] Ms. Smith's allegations also have no relation to this lawsuit and could not serve to establish a "pattern" of discrimination since the Court has already found that Plaintiffs have not shown Mory suffered any discrimination. Further, Plaintiffs do not specifically explain how the declaration

1   More importantly, it has been over a year since the initial complaint was filed.  [Doc. No.
2  1.**]**  Plaintiffs have had nine months of discovery and have even re-opened discovery once already.
3  [Defs.' Opp. at 3.]  The motion for summary judgment was filed on April 18, 2007, providing
4  Plaintiffs 71 days notice before the initial hearing date.  [Id.]  After having received one substantial
5  continuance, Plaintiffs had nearly four months to oppose the motion.  [Id.]  Plaintiffs already
6  deposed Officer Anderson and her new allegations also have no relation to this lawsuit.  [Id.]  In
7  addition, Plaintiffs deposed Chief Emerson and Captain Hunter <u>twice</u> already, they do not make
8  any citations to the depositions to demonstrate how the two men failed to cooperate, and they do
9  not specify what information further depositions might reveal.  Thus, taken together, these facts
10 warrant a denial of Plaintiffs' application.[7]

12 **IV.    Defendants' Motion for Sanctions is Denied**

13  After hearing oral argument and carefully reviewing the moving papers, the Court finds
14 that sanctions are inappropriate in this case.  While Plaintiffs' case rested on minimal supporting
15 evidence, it did not rise to a level of frivolousness.  Additionally, the Court finds that Plaintiffs did
16 not vexatiously multiply the proceedings, act in bad faith, or continue prosecuting the case based
17 on an improper purpose or motive.  The Court also recognizes that the Ninth Circuit has
18 traditionally exercised a heightened level of restraint when imposing sanctions against civil rights
19 plaintiffs.  <u>Quantz v. Edwards</u>, 2008 U.S. App. LEXIS 1479, *7-9 (9th Cir. 2008); <u>Zimmerman v.
20 Bishop Estate</u>, 25 F.3d 784, 791 (9th Cir. 1994); ("We have held that a court may award sanctions
21 against a civil rights plaintiff only in 'exceptional cases.' ").  Therefore, the Court **DENIES**

---

warrants a need for further discovery. Plaintiffs may be alleging that Ms. Smith is an example of other witnesses that are currently reluctant to come forward due to their fear of retaliation, but will eventually do so if given time. If this is the allegation, the Court finds it is wholly unsubstantiated by the evidence. Therefore, aside from the untimeliness, the Court finds the declaration does not bolster the merits of the 56(f) application.

[7] Plaintiffs' evidentiary objections and Defendants' evidentiary objections and objections to Plaintiffs' opposition papers as untimely are **DENIED** as moot because they did not affect this Court's determination on the motions before the Court. To the extent that the Court did rely on any evidence objected to, the objections are overruled.

1  Defendants' motion for sanctions.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment; **DENIES** Plaintiffs' 56(f) Application; and **DENIES** Defendants' motion for sanctions.

DATED: February 11, 2008

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge